## IN THE COURT OF COMMON PLEAS
## CLERMONT COUNTY, OHIO

| | |
|---|---|
| TOTAL QUALITY LOGISTICS, LLC, <br> 4289 Ivy Pointe Boulevard <br> Cincinnati, Ohio 45245, <br><br> **Plaintiff,** <br><br> v. <br><br> NAVAJO EXPRESS, INC., d/b/a DSCO LOGISTICS, <br> c/o Donald R. Digby, Jr., Registered Agent for Service of Process <br> 1400 West 64th Avenue <br> Denver, CO 80221, <br><br> and <br><br> JUSTIN WHITAKER, <br> 601 S. Forest St., Apt. 204 <br> Glendale, CO 80246, <br><br> and <br><br> LOGAN CAMIN, <br> 4918 W. 36th Ave. <br> Denver, CO 80212, <br><br> and <br><br> JOSEPH KERR, <br> 1444 St. Paul St. <br> Denver, CO 80206, <br><br> **Defendants.** | Case No.: 2017 CVH 00881 <br><br> Judge Haddad <br><br> VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND OTHER RELIEF |



EXHIBIT A

For its Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief against Defendants Navajo Express Inc., d/b/a DSCO Logistics ("Navajo"), Justin Whitaker ("Whitaker"), Logan Camin ("Camin"), and Joseph Kerr ("Kerr"), Plaintiff Total Quality Logistics, LLC ("TQL") states as follows:

## Introduction

1. This case arises from the breach of certain, contractual restrictive covenants contained in signed and enforceable agreements between TQL and Whitaker, Camin, and Kerr ("the individual defendants"), respectively, and TQL's conduct and complicity in connection therewith.

## Parties, Jurisdiction, and Venue

2. TQL is an Ohio limited liability company with its principal place of business located in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers across the continental United States.

3. Whitaker is a Colorado resident. He was previously a TQL employee and is now an employee of Navajo, a Colorado-based company which provides freight brokerage services and is a direct competitor of TQL.

4. Camin is a Colorado resident. He was previously a TQL employee and is now an employee of Navajo.

5. Kerr is a Colorado resident. He was previously a TQL employee and is now an employee of Navajo.

6. Navajo is a Colorado corporation but operates its business on a nationwide basis.

7. Jurisdiction and venue are appropriate because each individual Defendant contractually agreed to venue and jurisdiction in this Court, and all improper acts and conduct were committed against an Ohio company located in Clermont County.

## Facts

### A. The Nature of TQL's Business and the Logistics Industry

8. TQL is a national leader in the logistics industry, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management across the continental United States.

9. TQL's customers consist of companies that want to ship goods from one location to another. These customers include companies that need to ship their own goods. But many of TQL's customers also include other freight brokers that have already agreed to ship goods on behalf of another customer, but need assistance in finding a carrier to fulfill the shipment.

10. TQL does not own, operate, or lease any of its own trucks or trucking equipment. Nor does it employ any drivers to haul freight. Rather, TQL engages and coordinates independent carriers that are able and willing to haul freight at the times and places required by TQL's customers.

11. The third-party logistics industry (and the freight-shipping industry at large) is extremely competitive. Among other things, relationships with customers, carriers, and other brokers are essential to sustained success within the industry. TQL spends a great deal of time, money, and other resources developing relationships with new customers and strengthening relationships with existing ones. Further, TQL has made substantial investments to develop and protect the secrecy of its proprietary systems, processes, and procedures it uses to manage its operations and to compete in this hyper-competitive industry.

3

12. Further, TQL protects its trade secrets and confidential information by conditioning employee access upon use of constantly changing passwords. Likewise, TQL's systems implement internal controls that prevent employees from downloading or printing certain information.

**B.     The Individual Defendants' Employment With TQL**

  **(i)     Whitaker**

13. Whitaker worked at TQL from January 4, 2016 until January 5, 2017.

14. Before commencing employment with TQL, he was required to sign, and did sign, an Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement, a true and accurate copy of which is attached hereto as Exhibit A.

15. In the Agreement, Whitaker agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any TQL competitor, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Whitaker also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL.

16. While at TQL, Whitaker held the positions of Logistics Account Executive Trainee and Logistics Account Executive.

17. TQL provided Whitaker with extensive training on topics that included its services, pricing structure, sales strategies, customers, and general operations. Whitaker developed close relationships with and an intimate knowledge of certain TQL customers, and had access to TQL's trade secrets and confidential information. He was the primary point of contact with TQL customers with whom he interacted.

4

18. TQL recently learned that Whitaker has been working for Navajo as a Sales Account Manager in Logistics, a position that is the same as or similar to his position at TQL, and that such employment began prior to one year after his employment with TQL ended. Upon information and belief, Whitaker has used or disclosed TQL's confidential information, solicited TQL's customers, and/or otherwise competed with TQL. Given that he has assumed a similar, if not the same, role that he had while working with TQL, it is a virtual certainty that this will continue.

### (ii) Camin

19. Camin worked for TQL from March 4, 2013 until February 12, 2018.

20. Before commencing employment with TQL, he was required to sign, and did sign, an Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement, a true and accurate copy of which is attached hereto as Exhibit B.

21. In the Agreement, Camin agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any TQL competitor, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Camin also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL.

22. While at TQL, Camin held the positions of Logistics Account Executive Trainee, Logistics Account Executive, Sales Group Leader, and Sales Team Leader.

23. TQL provided Camin with extensive training on topics that included its services, pricing structure, sales strategies, customers, and general operations. Camin developed close relationships with and an intimate knowledge of certain TQL customers, and had access to

5

various types of TQL's trade secrets and confidential information. He was the primary point of contact with TQL customers with whom he interacted.

24. TQL recently learned that Camin began employment with Navajo as the Director of Logistics, a position that is the same as or similar to his position at TQL, prior to one year after his employment with TQL ended, and that he is and has been using or disclosing TQL's confidential information, soliciting TQL customers, and otherwise competing with TQ in his new position. Given that he assumed a similar, if not the same, role that he had while working with TQL, it is a virtual certainty that this conduct will continue.

(iii) **Kerr**

25. Kerr worked at TQL from October 12, 2015 until November 16, 2017.

26. Before commencing employment with TQL, he was required to sign, and did sign, an Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement, a true and accurate copy of which is attached hereto as Exhibit C.

27. In the Agreement, Kerr agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any TQL competitor, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Kerr also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL.

28. While at TQL, Kerr held the positions of Logistics Account Executive Trainee, Logistics Account Executive, Sales Group Leader, and Sales Team Leader.

29. TQL provided Kerr with extensive training on topics that included its services, pricing structure, sales strategies, customers, and general operations. Kerr developed close relationships with and an intimate knowledge of certain TQL customers, and had access to

6

various types of TQL's trade secrets and confidential information. He was the primary point of contact with TQL customers with whom he interacted.

30. TQL recently learned that Kerr began employment with Navajo as a Logistics Executive, a position that is the same as or similar to his position at TQL, prior to one year after his employment with TQL ended, and that he is and has been using or disclosing TQL's confidential information, soliciting TQL customers, and otherwise competing with TQL in his new position. Given that he has assumed a similar, if not the same, role that he had while working with TQL, it is a virtual certainty that this will continue.

**C.     Navajo's Knowledge of Contractual Violations**

31. Navajo continues to employ Whitaker despite knowledge of the restrictive covenant contained in Whitaker's Agreement with TQL and the other covenants and obligations therein, which upon information and belief Whitaker is breaching and has breached, including but not limited to the prohibition against soliciting TQL customers and disclosing or using TQL's confidential information.

32. Navajo continues to employ Camin despite knowledge of the restrictive covenant contained in Camin's Agreement with TQL and the other covenants and obligations therein, which Camin is breaching and has breached, including but not limited to the prohibition against soliciting TQL customers and disclosing or using TQL's confidential information.

33. Navajo continues to employ Kerr despite knowledge of the restrictive covenant contained in Kerr's Agreement with TQL and the other covenants and obligations therein, which Kerr is breaching and has breached, including but not limited to the prohibition against soliciting TQL customers and disclosing or using TQL's confidential information.

## COUNT ONE: BREACH OF CONTRACT
### (Asserted against Whitaker)

34. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

35. The Agreement attached hereto as Exhibit A is a valid and legally enforceable contract that TQL and Whitaker entered into freely and without duress.

36. In exchange for his commitment to be bound by the Agreement, Whitaker received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

37. The Agreement in Section 9(b)(i)-(ii) provides for a one-year period following employment during which Whitaker is prohibited from accepting employment or affiliation or association with a TQL competitor, of which Navajo is one. Section 9(b)(vi) provides for the tolling of that one-year period "during any time period during which the Employee violates any provision of this Agreement." In Section 9(d) of the Agreement, Whitaker expressly agreed that these covenants, among others, are "reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition."

38. Whitaker has breached and continues to breach the Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with one of one of TQL's direct competitors, used or disclosed TQL's confidential information and solicited its customers, and otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

39. Unless immediately restrained and enjoined, Whitaker will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

40. Therefore, consistent with this Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, and pursuant to the parties' agreement in Section 9(e) of the Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Whitaker from any further violation of the Agreement.

41. In the alternative and/or addition to such relief, as a direct and proximate result of Whitaker's breach and continuing breach of the Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

42. Pursuant to Section 9(e) of the Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Whitaker's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

## COUNT TWO: BREACH OF CONTRACT
### (Asserted against Camin)

43. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

44. The Agreement attached hereto as Exhibit B is a valid and legally enforceable contract that TQL and Camin entered into freely and without duress.

45. In exchange for his commitment to be bound by the Agreement, Camin received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

46. The Agreement in Section 9(b)(i)-(ii) provides for a one-year period following employment during which Camin is prohibited from accepting employment or affiliation or association with a TQL competitor, of which Navajo is one. Section 9(b)(vi) provides for the

9

tolling of that one-year period "during any time period during which the Employee violates any provision of this Agreement." In Section 9(d) of the Agreement, Camin expressly agreed that these covenants, among others, are "reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition."

47. Camin has breached and continues to breach the Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with one of one of TQL's direct competitors, used or disclosed TQL's confidential information and solicited its customers, and otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

48. Unless immediately restrained and enjoined, Camin will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

49. Therefore, consistent with this Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, and pursuant to the parties' agreement in Section 9(e) of the Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Camin from any further violation of the Agreement.

50. In the alternative and/or addition to such relief, as a direct and proximate result of Camin's breach and continuing breach of the Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

51. Pursuant to Section 9(e) of the Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Camin's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

## COUNT THREE: BREACH OF CONTRACT
### (Asserted against Kerr)

52. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

53. The Agreement attached hereto as Exhibit C is a valid and legally enforceable contract that TQL and Kerr entered into freely and without duress.

54. In exchange for his commitment to be bound by the Agreement, Kerr received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

55. The Agreement in Section 9(b)(i)-(ii) provides for a one-year period following employment during which Kerr is prohibited from accepting employment or affiliation or association with a TQL competitor, of which Navajo is one. Section 9(b)(vi) provides for the tolling of that one-year period "during any time period during which the Employee violates any provision of this Agreement." In Section 9(d) of the Agreement, Kerr expressly agreed that these covenants, among others, are "reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition."

56. Kerr has breached and continues to breach the Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with one of one of TQL's direct competitors, used or disclosed TQL's confidential information and solicited its customers, and otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

57. Unless immediately restrained and enjoined, Kerr will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

11

58. Therefore, consistent with this Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, and pursuant to the parties' agreement in Section 9(e) of the Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Kerr from any further violation of the Agreement.

59. In the alternative and/or addition to such relief, as a direct and proximate result of Kerr's breach and continuing breach of the Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

60. Pursuant to Section 9(e) of the Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Kerr's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

## COUNT FOUR: TORTIOUS INTERFERENCE WITH CONTRACT
(Asserted Against Navajo)

61. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

62. TQL has separate contractual relationships with Whitaker, Camin, and Kerr.

63. Navajo is aware of these contractual relationships.

64. Despite this knowledge, Navajo has knowingly and intentionally interfered with these contractual relationships, and continues to do so, by continuing to employ each of Whitaker, Camin, and Kerr in violation of their respective Agreements with TQL.

65. Navajo has tortiously, willfully, and maliciously ignored the contractual obligations that each of Whitaker, Camin, and Kerr owes to TQL, without any justifiable excuse.

66. As a proximate result of Navajo's conduct, TQL has suffered, and will continue to suffer, damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

67. Because Navajo's conduct has been intentional, willful, and malicious, TQL is entitled to an award of punitive damages.

### COUNT FIVE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
**(Asserted Against All Defendants)**

68. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

69. TQL has business relationships with its customers of which each Defendant is aware.

70. Defendants have knowingly and intentionally, and without justification, interfered with such relations by soliciting such customers and utilizing TQL's confidential information in violation of the contracts the respective defendants entered into with TQL.

71. Unless immediately restrained, Defendants' conduct threatens to cause and does cause and will continue to cause TQL irreparable harm.

72. In addition, as a proximate result of Defendants' conduct, TQL has suffered, and will continue to suffer, damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

73. Because Defendants' conduct has been intentional, willful, and malicious, TQL is entitled to an award of punitive damages.

### COUNT SIX: VIOLATION OF OHIO UNIFORM TRADE SECRETS ACT
**(Asserted Against All Defendants)**

74. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

75. TQL zealously protects its proprietary and confidential information, including, without limitation, information pertaining to its operating policies and procedures, financial

13

records (such as credit histories and other information about customers), transaction history and other information, pricing, manner and mode of conducting business, terms of business dealings with customers, contracts and agreements of all kinds, marketing and sales strategies, customer lists and related information, logistics management, and other data.

76. Access to this information is restricted to those TQL employees who have signed contracts similar to or the same as the Contract, which protects the information from misuse or disclosure to unauthorized individuals.

77. Further, TQL conditions employee access to this information upon their use of constantly changing passwords, and TQL implements internal controls that prevent employees from downloading or printing certain information. TQL also has the ability to monitor information sent out from TQL's system to an outside location.

78. This proprietary and confidential information constitutes protected trade secrets under the Ohio Uniform Trade Secrets Act.

79. Independent of their contracts with TQL, which impose the same duty, the individual Defendants' access to this information occurred under circumstances that gave rise to a duty on each's part to limit the use of that information to purposes within the scope of his employment with TQL and to maintain the secrecy of the information

80. Each of the individual Defendants has misappropriated TQL's trade secrets and other confidential information by disclosing or otherwise misusing those trade secrets for his benefit and/or the benefit of others. Navajo misappropriated TQL's trade secrets and other confidential information by acquiring the same despite actual or constructive knowledge that it was acquired by improper means and used and disclosed by persons who acquired it improperly and who were subject to Navajo's control.

81. This misappropriation of TQL's trade secrets has caused past and future financial injury to TQL, and TQL is entitled to recover damages from Defendants in an amount to be proven at trial but believed to exceed the jurisdictional minimum of this Court.

82. Moreover, because the misappropriation of TQL's trade secrets was and continues to be knowing, willful, and/or malicious, TQL is entitled to an injunction and/or specific performance in the form of each returning to TQL all pirated information and damages.

### COUNT SEVEN: VIOLATION OF DEFEND TRADE SECRETS ACT
**(Asserted Against All Defendants)**

83. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

84. The confidential information described above constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3) in that: (1) such information consists of forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing; (2) that TQL takes reasonable measures, described above, to keep secret; and (3) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

85. Given that TQL is a nationally operating freight broker, such information is used, or is intended to be used, in interstate commerce within the meaning of 18 U.S.C. § 1836(b).

86. By disclosing and using such information, Defendants have misappropriated TQL's trade secrets within the meaning of 18 U.S.C. § 1839(5)-(6), in that: (1) the information

was acquired and used by improper means because the same constituted a breach of the Agreements; or (2) because such conduct constituted disclosure or use of TQL's trade secrets by persons who had obtained them by improper means, or was acquired by persons who had a duty under the Agreement to maintain the secrecy of such information.

87. TQL is entitled to an injunction to prevent any actual or threatened misappropriation, and that requires affirmative acts to protect the trade secret information.

88. Defendants' misappropriation of TQL's trade secrets has also proximately caused TQL actual damages in an amount to be proven at trial, but in excess of the jurisdictional minimum of this Court, as well as an amount to represent the unjust enrichment of Defendants to the extent such amount is not included in the computation of actual damages.

89. Because the misappropriation of TQL's trade secret information was undertaken willfully and maliciously, TQL is further entitled to exemplary damages in an amount up to two times the total amount of damages it sustained.

## COUNT EIGHT: CIVIL CONSPIRACY
### (Asserted Against All Defendants)

90. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

91. Defendants' combined, malicious actions, in concert with each other, undertaken with the full knowledge and approval of each other, as described herein, resulting in injury to TQL and its relationships with its customers, constitute a civil conspiracy to misappropriate TQL's trade secret information and/or commit an intentional interference with TQL's business relations.

92. TQL has been proximately damaged by Defendants' civil conspiracy, in an amount to be proven at trial.

93. In addition, because Defendants' actions were willful and wanton, and demonstrated ill will and malice, TQL is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, TQL respectfully requests that this Court issue a judgment as follows:

a) Issue immediate, preliminary, and permanent injunctive relief prohibiting Defendants from any further violation of their Agreements with TQL, plus attorney's fees as provided in the Agreement, from any further misappropriation of TQL's trade secret information, and from any further tortious interference with TQL's business relations;

b) Award compensatory damages in favor of TQL in an amount to be determined at trial in excess of $25,000

c) Award punitive damages in favor of TQL;

d) Award attorney's fees as provided in the Agreements or as otherwise provided by law;

e) Court costs, prejudgment interest, and post-judgment interest; and

f) Any other relief that this Court deems just and proper.

Respectfully Submitted,

Matthew J. Wiles (0075455)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
Phone: (614) 628-6880
Facsimile: (614) 628-6890
matthew.wiles@dinsmore.com

*Attorneys for Plaintiff Total Quality Logistics, LLC*

## VERIFICATION OF COMPLAINT

STATE OF OHIO             )

COUNTY OF CLERMONT        )

I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

_____
Marc Bostwick

Subscribed and sworn by _____ before me, a Notary Public, on this ___th day of March, 2018.

_____
Notary Public

18